UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEW MEXICO

In re:

PLAZA DE RETIRO, INC.,   Case No. 09-10974-t11

    Debtor.

NEW MEXICO HEALTH CARE ASSN., INC.,

    Plaintiff,

v.   Adv. No. 18-01043-t

PLAZA DE RETIRO, INC. et. Al.,

    Defendants.

## **OPINION**

This interpleader proceeding asks the Court to determine the proper recipients of about $89,000. The plaintiff filed the proceeding in state court and named 92 defendants as potential claimants. One defendant removed the proceeding and filed a motion for turnover. Another defendant objected to turnover and asked the Court to remand the proceeding. Having reviewed the briefs of the parties and the record of the bankruptcy case, the Court concludes that it will grant the turnover motion and deny the motion to remand.

I.    FACTS

For the limited purpose of ruling on the motions for turnover and remand, the Court takes judicial notice of the following facts, gleaned from the docket in the main bankruptcy case and this

adversary proceeding:[1]

Plaza de Retiro, Inc. ("Debtor") operated a continuing care facility in Taos, New Mexico. The facility had about 64 residential units, a dining hall, an administration building, and a 20-bed medical wing.

From 1991 to 2006, Debtor paid into a workers' compensation self-insurance group administered by New Mexico Health Care Association, Inc. ("NMHCA"). The purpose of the self-insurance group was to provide workers' compensation insurance to group members at a reasonable cost.

On March 11, 2009, Debtor filed a voluntary petition under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of New Mexico.

The Debtor filed its bankruptcy schedules on March 26, 2009. The Debtor amended schedule B on April 24, 2009. Neither the original nor the amended schedule B disclosed the $88,798.21 Dividend (defined below) that is the subject of this adversary proceeding.

On August 13, 2009, the Court (Hon. James S. Starzynski) granted the U.S. Trustee's motion to appoint a chapter 11 trustee. The U.S. Trustee appointed Linda Bloom (the "Trustee").

The Trustee filed a plan of liquidation on October 19, 2009 (the "Plan"). The Plan proposed to transfer all estate assets to a liquidating trust, for the Trustee to be appointed as the liquidating trustee of the trust, and for all trust assets to be liquidated, and the proceeds distributed to creditors.

On July 14, 2010, the Court approved the sale of the Debtor's real estate and tangible personal property to Taos Senior Living Partners, LP ("TSLP"). The executory contracts between

---

[1] The Court took judicial notice of the docket in the main bankruptcy case and this adversary proceeding. *See St. Louis Baptist Temple, Inc. v. Fed. Deposit Ins. Corp.*, 605 F.2d 1169, 1172 (10th Cir. 1979) (a court may *sua sponte* take judicial notice of its docket); *LeBlanc v. Salem (In re Mailman Steam Carpet Cleaning Corp.)*, 196 F.3d 1, 8 (1st Cir. 1999) (citing Fed. R. Evid. 201 and concluding that "[t]he bankruptcy court appropriately took judicial notice of its own docket").

the Debtor and the residents of the continuing care facility were assumed and assigned to TSLP on October 5, 2010.

On April 21, 2011, the Court confirmed the Plan. Article X of the Plan, Retention of Jurisdiction, provides:

> Unless the Bankruptcy Court determines otherwise, the Court shall retain jurisdiction of this Bankruptcy Case and over all adversary proceedings, contested matters, and other matters or proceedings arising in or in connection with this Bankruptcy Case, and all matters relating to or arising out of the administration of the Plaza de Retiro, Inc. Liquidating Trust, including without limitation jurisdiction to: . . .
>    d. Classify, fix, liquidate, allow, or disallow Claims and direct distribution of the funds under the Plan, and hear and determine all objections to Claims, controversies, suits, and disputes pending on or after the Confirmation Date;
>    e. Hear and determine all adversary proceedings still pending and not dismissed, or which are hereinafter filed to determine disputed matters not disposed of by the Plan, but which relate to the Plan; . . .
>    i. Correct any defect, cure any omission, or reconcile any inconsistence in the Plan or the Confirmation order as may be necessary to carry out the Plan or the Confirmation Order, or as may be necessary to carry out the purposes and intent of the Plan; . . .
>    k. Determine any and all disputes arising under or relating to the Plan and enforce and administer the provisions of the Plan; . . .
>    n. Make such Orders as are necessary or appropriate to carry out the provisions of the Plan; . . .
>    o. Make such Orders or give such direction as may be appropriate under § 1142 of the Bankruptcy Code. . . .

The Trustee filed a final report on July 15, 2013. She listed the following assets as part of the liquidating trust estate:

| Proceeds from the sale of the continuing care facility | $243,688.37 |
|---|---|
| Operating account | $ 10,332.89 |
| Tax refund | $     293.23 |
| 2010 Work Comp Premium overpayment refund | $   1,891.01 |
| Interest earned | $       72.62 |
| Total | $256,278.12 |

No objections were filed to the Trustee's final report, and she distributed the trust assets as

-3-

proposed in the report. At the time, the Dividend had not yet been declared; it seems clear that the Trustee had no knowledge of it.

The Trustee moved for entry of a final decree on September 23, 2013. In the motion the Trustee stated that "[a]ll assets of the Liquidating Trust established by [the] Chapter 11 Plan have been distributed pursuant to the terms of said Trust" and that "The estate of Debtor has been fully administered."

It now appears that the estate was not fully administered. The Dividend is a valuable estate asset. Lacking knowledge about the Dividend or any potential right to it, on September 24, 2013, the Court entered a final decree closing the case and discharging the Trustee.

On December 2, 2015, the State of New Mexico Worker's Compensation Administration (WCA") issued a letter stating that the self-insurance group was authorized to offer a dividend to group members for premiums paid from 1991 to 1997. On November 18, 2016, the WCA issued another letter, stating that the self-insurance group was authorized to offer a dividend to group members for premiums paid from 1991 to 2006. NMHCA, as administrator of the self-insurance group, determined that Debtor's share of the authorized dividend was $88,798.21 (the "Dividend"). By then, the liquidating trust has been dissolved, the bankruptcy case had been closed for more than three years, and the Trustee had been discharged.

On June 15, 2018, NMHCA filed this proceeding in the Second Judicial District Court of the State of New Mexico ("State Court"), asking the court to determine who should receive the Dividend. The complaint named 92 defendants, mostly creditors of the Debtor. One defendant, William F. Davis & Associates, P.C. ("Davis & Associates"), removed the proceeding to this Court on July 23, 2018. The next day, Davis & Associates filed a motion seeking turnover of the Dividend. TSLP objected to the turnover motion; it asked the Court to remand the proceeding to

state court, arguing that the Court lacks subject matter jurisdiction.

## II. DISCUSSION

A. <u>The Dividend is Estate Property</u>.

With exceptions not relevant here, a bankruptcy estate consists of "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). Because the Dividend was paid on account of the Debtor's pre-petition insurance premiums, the right to the Dividend was estate property on the petition date, and the Dividend became estate property when it was declared. If the Debtor had not filed for bankruptcy protection, the NMHCA would have sent the Dividend to the Debtor. Had the bankruptcy case had still been pending when the Dividend was declared, NMHCA would have sent the Dividend to the Trustee. Thus, the Dividend is an asset of the Debtor's estate, available to pay the estate's creditors.

Section 554(c) provides that property which is scheduled, but "not otherwise administered at the time of the closing of a case is abandoned to the debtor and administered for purposed of section 350 of this title." 11 U.S.C. § 554. *See also In re Riazuddin*, 363 B.R. 177, 184 (10th Cir. BAP 2007) (quoting the rule). The rule is different for unscheduled property. Courts have found that where an asset is not scheduled, it can neither be administered nor abandoned when the case is closed. Such assets remain part of the bankruptcy estate. *Riazuddin*, 363 B.R. at 184; *see also Jeffrey v. Desmond*, 70 F.3d 183, 186 (1st Cir. 1995) (for property to be abandoned pursuant to 11 U.S.C. § 554(c), it must be scheduled before the case is closed); *Vreugdenhill v. Navistar Int'l Transp. Corp.*, 950 F.2d 524, 526 (8th Cir. 1991) (unscheduled claim could not be abandoned by operation of law); *Parker v. Wendy's Int'l, Inc.*, 365 F.3d 1268, 1272 (11th Cir. 2004) ("Failure to list an interest on a bankruptcy schedule leaves that interest in the bankruptcy estate.").

Here, the Dividend was never listed on the Debtor's bankruptcy schedules. As a result, it was not abandoned under 11 U.S.C. § 554(c) when the Debtor's case was closed, and therefore remains a part of the Debtor's estate. This proceeding involves an administration of an estate asset.[2]

The Bankruptcy Code provides that "a case may be reopened in the court in which such case was closed to administer assets, to accord relief to the debtor, or for other cause." 11 U.S.C. § 350. Once a potential omitted asset is discovered, it is routine and proper for the Court to reopen the case and determine if the asset is in fact estate property. A bankruptcy court has "discretion in many instances whether to reopen an estate," but it is the "duty of the court to reopen an estate whenever prima facie proof is made that it has not been fully administered." *Riazuddin*, 363 B.R. at 183-84. *See also Mullendore v. United States (In re Mullendore)*, 741 F.2d 306, 308 (10th Cir. 1984) (citing *In re Joslyn's Estate*, 171 F. 2d 159, 164 (7th Cir. 1948)); *Riazuddin*, 363 B.R. at 183-84 ("[i]f there are assets 'of such probability, administrability, and substance' in existence so as to 'make it unreasonable under all the circumstances for the court not to deal with them,' it is an abuse of discretion not to reopen the case to allow the assets to be administered.").

B.  Jurisdiction Over the Proceeding.

1.  "Arising Under," "arising in," and "related to" jurisdiction. Section 1334(b) provides:

> Except as provided in subsection (e)(2), and notwithstanding any Act of Congress that confers exclusive jurisdiction on a court or courts other than the district courts, the district court shall have original but not exclusive jurisdiction of all civil proceeding arising under title 11, or arising in or related to cases under title 11.

Generally, "arising under" proceedings are "those proceedings that involve a cause of action

---

[2] The Plan purported to transfer all estate assets to the liquidating trust. Because the Dividend had not been declared, nor had any right to receive the Dividend yet accrued, the transfer likely did not include any claim to the Dividend. In any event, given that the liquidating trust has been dissolved and the Trustee discharged, it is fair and reasonable to view the Dividend as an omitted asset.

created or determined by a statutory provision of title 11." *In re Wood*, 825 F.2d 90, 96 (5th Cir. 1987); *In re Eastport Associates*, 935 F.2d 1071, 1076 (9th Cir. 1991) (quoting *Wood*). These include proceedings to avoid fraudulent transfers, *see, e.g.*, *Robison v. First Fin. Capital Mgmt. Corp. (In re Sweetwater)*, 55 B.R. 724, 729 (D. Utah 1985), and to exercise the trustee's § 544 "strong arm" powers. *See, e.g.*, *Carlton v. BAWW, Inc.*, 751 F.2d 781, 787 (5th Cir. 1985); *see generally* 1 Collier on Bankruptcy ¶ 3.01[3][e][i] (16th ed.).

According to *Wood*,

> The meaning of "arising in" proceedings is less clear, but seems to be a reference to those "administrative" matters that arise *only* in bankruptcy cases. In other words, "arising in" proceedings are those that are note based on any right expressly created by title 11, but nevertheless, would have no existence outside of the bankruptcy.

825 F.2d at 96-97. *See also Eastport*, 935 F.2d at 1076 (again quoting *Wood*).

Finally, "related to" proceedings "are civil proceedings that, in the absence of a bankruptcy petition, could have been brought in a district court or state court." *Gardner v. United States (In re Gardner)*, 913 F.2d 1515, 1518 (10th Cir. 1990) (citing *In re Colorado Energy Supply, Inc.*, 728 F.2d 1283, 1286 (10th Cir. 1984)). "[T]he test for determining whether a civil proceeding is related in bankruptcy is whether the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy." *Gardner*, 913 F.2d at 1518, quoting *Pacor, Inc. v. Higgins*, 743 F.2d 984, 994 (3rd Cir. 1984).

Here, the administration of the Dividend likely is within the Court's "arising in" jurisdiction, as it involves the administration and distribution of an estate asset.

2. <u>Jurisdiction over estate property</u>. 28 U.S.C. § 1334(e)(1) provides:

The district court in which a case under title 11 is commenced or is pending shall have exclusive jurisdiction--
    (1) of all the property, wherever located, of the debtor as of the commencement of such case, and of property of the estate.

A treatise gives the following commentary on this subsection:

> The exclusive jurisdiction granted in section 1334(e) extends not only to property of the debtor as of the commencement of the case, but also to property of the estate. During the course of title 11 cases in general and of chapter 11 cases in particular, the estate acquires property in addition to or different from the property of the debtor as it existed as of the commencement of the title 11 case. Section 1334(e) makes it clear that both kinds of property are subject to its provisions.

1 Collier on Bankruptcy ¶ 3.01[4] (internal citation omitted). Here, the Dividend likely is estate property. If so, the Court has exclusive jurisdiction over it.

    3.    <u>Core Proceedings</u>. Core proceedings are those that arise under title 11 or arise in cases under title 11. *See Wood*, 825 F.2d at 96; *see generally* 1 Collier on Bankruptcy ¶ 3.02[2] ("Core proceedings are, at most, those that arise in title 11 cases or arise under title 11."); *see also Gardner v. United States (In re Gardner),* 913 F.2d 1515, 1518 (10th Cir. 1990) (core proceedings are those "which have no existence outside of bankruptcy."). Actions which "do not depend on the bankruptcy laws for their existence and which could proceed in another court are not core proceedings." *Id. See also In re Johnson*, 575 F.3d 1079, 1082 (10th Cir. 2009) (quoting *In re Gardner*).

Under 28 U.S.C. § 157(b)(2), core proceedings include "matters concerning the administration of the estate" (§ 157(b)(2)(A)) and "orders to turn over property of the estate" (§ 157(b)(2)(E)). Administration of the Dividend is a core proceeding. Thus, because core proceedings must arise in title 11 cases or arise under title 11, administration of the Dividend is within the Court's § 1334(b) jurisdiction.

    4.    <u>Retained Jurisdiction Under the Plan</u>. Finally, the jurisdiction retention provisions of the Plan encompass administration of the Dividend. Under the Plan, the Court retained jurisdiction to "direct distribution of the funds under the Plan," "determine disputed matters not

disposed of by the Plan, but which relate to the Plan," "cure any omission . . . in the Plan . . . necessary to carry out the purposes and intent of the Plan," "make such orders as are necessary or appropriate to carry out the provisions of the Plan," and "make such orders . . .as may be appropriate under § 1142 of the Bankruptcy Code." Together, these are a clear mandate to deal with unanticipated problems such as how to administer the Dividend.

C. <u>Removal was Proper</u>.

Davis & Associates removed the proceeding pursuant to 28 U.S.C. § 1452(a), which provides that a party "may remove any claim or cause of action in a civil action . . . to the district court for the district where such civil action is pending, if such a district court has jurisdiction of such claim or cause of action under 1334 of this title." As shown above, the district court, and hence this Court,[3] has the § 1334(b) jurisdiction over the proceeding, as it "arises in" a case under title 11. In addition, the Court has jurisdiction under § 1334(e), as it involves property of the estate.

D. <u>The Proceeding Should not be Remanded</u>.

28 U.S.C. § 1452(b) provides in part:

The court to which such claim or cause of action is removed may remand such claim or cause of action on any equitable ground.

In *In re Gregory Rock House Ranch, LLC*, 339 B.R. 249 (Bankr. D.N.M. 2006), the court held that "in determining whether it is appropriate to remand a removed proceeding, it is proper for the Court to consider the standards applicable to abstention." 339 B.R. at 252, citing *Personette v. Kennedy (In re Midgard Corp.)*, 204 B.R. 764, 775 (10th Cir. BAP 1997); *see also Kearney v. Abruzzo (In re Victor Kearney)*, 2018 WL 4959750, at *2 (Bankr. D.N.M.).

---

[3] The district court is permitted to refer to this Court "any or all cases under title 11 and any or all proceedings arising under title 11 or arising in or related to a case under title 11 . . . ." 28 U.S.C. § 157(a). The district court has referred all such cases and proceedings to this Court. The district court did so by an administrative order entered March 19, 1992.

-9-
Case 18-01043-t    Doc 33    Filed 10/24/18    Entered 10/24/18 11:16:40    Page 9 of 13

1. <u>Mandatory Abstention</u>. There are two types of abstention: "mandatory" (28 U.S.C. § 1334(c)(2)), and "permissive" (28 U.S.C. § 1334(c)(1)). Clearly, the requirements for mandatory abstention are not met in this instance,[4] and TSLP does not argue for mandatory abstention.

2. <u>Permissive Abstention</u>. The "permissive abstention" subsection provides:

> [N]othing in this section prevents a district court in the interest of justice, or in the interest of comity with State court or respect for State law, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11.

28 U.S.C. § 1334(c)(1). The factors courts analyze in determining whether to abstain under § 1334(c)(1) include the:

1. Effect that abstention would have on the efficient administration of the bankruptcy estate;
2. Extent to which state law issues predominate;
3. Difficulty or unsettled nature of applicable state law;
4. Presence of a related proceeding commenced in state court or other nonbankruptcy court;
5. Federal jurisdictional basis of the proceeding;
6. Degree of relatedness of the proceeding to the main bankruptcy case;
7. Substance of the asserted "core" proceeding;
8. Feasibility of severing the state law claims;
9. Burden the proceeding places on the bankruptcy court's docket;
10. Likelihood that commencement of the proceeding in bankruptcy court involves forum shopping by one of parties;
11. Existence of a right to jury trial; and
12. Presence of nondebtor parties in the proceeding.

*In re Fred Dale Van Winkle*, 2016 WL 196981, at *5 (Bankr. D.N.M.) (citing *In re Commercial Financial Services, Inc.*, 251 B.R. 414, 429 (Bankr. N.D. Okla. 2000), reconsideration granted in

---

[4] Courts have interpreted § 1334(c)(2) as containing the following requirements: 1. The motion for abstention must be timely filed; 2. The matter must be based on a state law claim or cause of action; 3. The action was commenced in state court; 4. The action can be timely adjudicated in state court; 5. The claim is within the Court's non-core jurisdiction; and 6. There is no independent source of federal jurisdiction that would have permitted the plaintiff to commence the action in federal court in the absence of the bankruptcy case. *Hernandez v. Lasalle Bank, N.A. (In re Hernandez)*, 2010 WL 5155011, at *4 (Bankr. D.N.M. 2010). Requirements 2, 5, and 6 cannot be satisfied in this case, so mandatory abstention does not apply.

part, 225 B.R. 68 (Bankr. N.D. Okla. 2000), and *Republic Reader's Service, Inc., v. Magazine Service Bureau, Inc., (In re Republic Reader's Service, Inc.)*, 81 B.R. 422, 428-429 (Bankr. S.D. Tex. 1987)). The Court weighs the factors as follows:

1. <u>Effect on efficient administration</u>. This factor does not favor remand. Given the Court's familiarity with the Debtor's bankruptcy case, and the Plan, it would be more efficient for the Court to administer the Dividend.

2. <u>Extent to which state law issues predominate</u>. This factor does not favor remand. Entitlement to some or all of the Dividend is a question of interpreting the events that transpired in this bankruptcy case before it was closed and, possibly, applying the Bankruptcy Code's priority scheme. There are no state law issues.

3. <u>Difficulty or unsettled nature of applicable state law</u>. This factor does not favor remand. There are no state law issues.

4. <u>Presence of a related state court proceeding</u>. This factor does not favor remand. There is no related state court proceeding.

5. <u>Federal jurisdictional basis of the proceeding</u>. This factor does not favor remand. This is a core proceeding under 28 U.S.C. § 157, and "arises in" a case under title 11. 28 U.S.C. § 1334(b). Further, the proceeding involves estate property, so this Court has *exclusive* jurisdiction over it. § 1334(e)(1).

6. <u>Degree of relatedness of the proceeding to the main bankruptcy case</u>. This factor does not favor remand. The Dividend is the only remaining asset of the estate and is closely related to the main case.

7. <u>Substance of the asserted "core" proceeding</u>. This factor does not favor remand. The administration of the Dividend, an estate asset, clearly is a core proceeding.

8. <u>Feasibility of severing the state law claims</u>. This factor does not favor remand. There are no state law claims.

9. <u>Burden on the bankruptcy court's docket</u>. This factor does not favor remand. This Court has time to hear and decide the matters pending before it and is already "up to speed" on Debtor's bankruptcy case.

10. <u>Likelihood of forum shopping</u>. This factor is neutral. There is no indication that any party is forum shopping.

11. <u>Right to a jury trial</u>. This factor is neutral. There does not appear to be a right to a jury trial in either the bankruptcy court or state court.

12. <u>Presence of non-debtor parties</u>. This factor does not favor remand. All the parties are potential claimants to some or all of the Dividend.

Overall, the factors do not weigh in favor of permissive abstention. The Court therefore will not remand this proceeding under 28 U.S.C. § 1452(b).

E. <u>Turnover of the Dividend is Appropriate</u>.

Given that the Court has determined that removal of this proceeding was appropriate, and that remand and/or abstention is not warranted, there is no reason why NMHCA should continue to hold the Dividend. It would be more appropriate for the Dividend to be placed in the Court registry, pending entry of an order directing disbursement of the Dividend to the proper parties.

III. CONCLUSION

The proceeding was properly removed to this Court under 28 U.S.C. § 1452(a). This Court has exclusive jurisdiction over estate assets like the Dividend and has original jurisdiction over this "arising in" proceeding. Mandatory abstention does not apply, while the relevant factors do not weigh in favor of equitable remand. Therefore, the Court will grant the motion for turnover and deny the motion to remand. A separate order will be entered.

/s/ David T. Thuma
_____
Hon. David T. Thuma
United States Bankruptcy Judge

Entered: October 24, 2018

Copies to: counsel of record